O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| REGINALD LOCKHART,<br><br>              Plaintiff,<br><br>     v.<br><br>COLUMBIA SPORTSWEAR COMPANY,<br><br>              Defendant. | Case No. 5:15-cv-01534-ODW-PLA<br><br>**ORDER GRANTING MOTION TO REMAND [14]** |

## I.  INTRODUCTION

Plaintiff Reginald Lockhart ("Lockhart") moves to remand this action to Riverside Superior Court for lack of subject-matter jurisdiction. (ECF No. 14.) Lockhart argues that Defendant Columbia Sportswear USA Corporation ("Columbia"), failed to establish diversity jurisdiction under 28 U.S.C. § 1332 because Columbia failed to prove that the amount in controversy exceeds $5,000,000, as required by the Class Action Fairness Act of 2005 ("CAFA").  For the reasons discussed below, the Court finds that Columbia's Removal does not meet the standards set forth by 28 U.S.C. § 1446.  Therefore, this Court **GRANTS** Plaintiff's Motion to Remand.[1]  (ECF No. 14.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

On June 23, 2015, Lockhart filed his original class action complaint in Riverside Superior Court, alleging causes of action for: (1) failure to pay overtime wages, (2) failure to provide meal periods, (3) failure to provide rest periods, (4) failure to pay minimum wages, (5) failure to timely pay all wages upon termination, (6) failure to timely pay wages during employment, (7) failure to provide accurate wage statements, (8) failure to keep appropriate payroll records, (9) failure to reimburse business expenses, and (10) unfair business competition. (ECF No. 1, Not. of Removal ["NOR"] Ex. A.) These claims only involve state law. Lockhart defines the putative class members as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California." (*Id.* ¶ 13.) In the Complaint, Lockhart further alleges that the amount in controversy for his individual claims fell below $75,000. (*Id.* ¶ 1.)

Columbia removed this action on July 29, 2015 on the basis of diversity jurisdiction under CAFA. On August 14, 2015, Lockhart moved to remand. (ECF No. 14.) Columbia timely opposed and Lockhart timely replied. (ECF Nos. 17, 18.) Lockhart's Motion is now before the Court for decision.

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). But courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332. A defendant may remove a case from state court to federal court pursuant to the federal removal statute, 28 U.S.C. § 1441, on the basis of federal question or diversity jurisdiction. To exercise diversity jurisdiction, a federal court must find complete diversity of citizenship among the adverse parties, and the amount in controversy must exceed $75,000, usually exclusive of interest and costs. 28 U.S.C. § 1332(a).

Under CAFA, federal courts have original jurisdiction over a class action if (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the aggregated amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see also Dart Cherokee Basin Operating Co. v. Owens*, ––– U.S. –––, 135 S. Ct. 547, 554–55 (2014).

## IV. DISCUSSION

Columbia argues that this Court has original jurisdiction pursuant to CAFA because (1) Lockhart and Columbia are citizens of different states, (2) the class action is filed on behalf of more than 100 putative class members, and (3) the amount in controversy exceeds $5 million. (NOR ¶ 9.) Lockhart contends that the Court should remand this matter because Columbia failed to prove diversity of citizenship and inadequately demonstrated that the amount in controversy exceeds $5 million.

As the removing party, Columbia bears the burden of proving federal subject-matter jurisdiction under CAFA by a preponderance of the evidence. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). Recently, the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal. *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554–55. However, if the defendant's assertion of the amount in controversy is challenged by the plaintiff in a motion to remand, both sides submit proof, and the court may then decide where the preponderance lies. *Id.* "Under this system, CAFA's requirements are to be tested by

consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

When discussing the amount in controversy, a removing party cannot speculate, but must provide the underlying facts supporting its calculations. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *see also Gaus*, 980 F.2d at 567. A court's ultimate inquiry is the amount put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *Korn*, 536 F. Supp. 2d at 1205.

Columbia argues that the amount in controversy is at least $5,768,586.83, with another $1,442,146.71 in attorney's fees. Lockhart contests Columbia's conclusions because of the lack of underlying evidence. As explained in further detail below, the Court disagrees with the assumptions underlying the alleged amount in controversy.

First, Columbia calculates a range of possible penalties for Lockhart's First Cause of Action, failure to pay overtime wages. (NOR ¶ 31.) Assuming one, three, or five hours of overtime per week for each employee, Columbia posits that the penalties could range from $371,779.61 to $1,858,898.93. The Court believes that this range does not actually reflect the overtime claim as presented in the Complaint. Lockhart alleges that Columbia failed to pay the overtime *premium* (time-and-one-half) to employees who worked more than eight hours a day or more than forty hours in a week. (NOR Ex. A ¶¶ 53, 55.) Lockhart does not allege that Columbia failed to pay less than an employee's normal wages for such work. Therefore, Columbia should have based its calculations on the additional amount per hour that employees were entitled to receive for overtime worked, not the total overtime wage.

For example, Lockhart earned $8.75 per hour during his employment. (Young Decl. ¶ 6.) If Lockhart worked over eight hours in a day, he would earn an extra $4.375 per hour on top of his normal hourly wage for a total of $12.75 per hour. Lockhart alleges in the Complaint that he and other class members were not paid that extra overtime premium on top of their normal hourly wage. The Court's calculations

1  based on this overtime premium produce penalties ranging from $123,926.54 to
2  $619,632.68 for one and five hours of overtime per week, respectively.[2] The Court
3  finds that assuming only one hour of overtime per week is reasonable given
4  Lockhart's allegations that class members worked overtime but were not paid time-
5  and-one-half "[a]t all material times." (NOR Ex. A ¶ 37); *see Jasso v. Money Mart
6  Express*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012)
7  ("Given the allegations of a 'uniform policy and scheme' and that violations took
8  place 'at all material times,' one violation per week . . . is a sensible reading.").

9  Additionally, Columbia provided no evidence regarding the average number of
10 overtime worked by its employees although it presumably controls and has access to
11 the business records that would be necessary for such a calculation. *See Roth v.
12 Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("[I]t is proper for
13 district courts to consider which party has access to or control over the records and
14 information required to determine whether the amount in controversy requirement is
15 met."). Without such evidence, the Court believes a reasonable calculation of the
16 amount in controversy for Lockhart's First Cause of Action is **$123,926.54**. *See
17 Jasson*, 2012 WL 699465, at *5 ("It would not be reasonable to double, triple, or
18 quadruple those numbers without any evidence to support the calculations.").

19 Columbia also includes estimated penalties for Lockhart's Second, Third,
20 Fourth, and Fifth Causes of Action in its total amount in controversy. These claims
21 include meal and rest period violations, minimum wage violations, and final wages
22 not timely paid ("waiting time violations"), respectively. While Lockhart alleges that
23 Columbia "engaged in a uniform policy and systematic scheme of wage abuse against
24 their hour-paid or non-exempt employees," nowhere in the Complaint does the Court
25 find any mention of the actual frequency of the violations. (NOR Ex. A ¶ 25.)
26 Instead, Columbia calculated the amount in controversy by making a series of

---

28 [2] 24,371 workweeks X $5.085 overtime premium [$15.255 total wage for overtime hours - $10.17 average hourly wage] X number of overtime violations per week (1, 3, or 5)

assumptions regarding the frequency of violations, without providing any factual basis to the Court.

Columbia first assumes a once per week violation rate (at minimum) for both the meal and rest period claims. (NOR ¶ 36.) Given that Lockhart alleges that "Plaintiff and other class members . . . were required to work for periods longer than five (5) hours without an uninterrupted meal period," the Court agrees with Columbia that it is reasonable to assume that each employee missed a meal and rest break during each week that the employee worked. (NOR Ex. A ¶ 61.)

However, the Court does not accept Columbia's calculations based on six missed rest and meal periods or the calculations based on ten missed rest and meal periods per week. Columbia has altogether failed to provide any information that all 575 individuals employed at Columbia between June 23, 2011 and June 23, 2015 worked three to five times per week or that the employees worked shifts long enough to require a meal or rest break. Without further evidence showing these foundational facts, the Court finds calculations based on six or ten violations per week unreasonable. Thus, the Court finds that assuming one missed meal period and one missed rest period per week is reasonable. Accordingly, the amount in controversy for the Second and Third Causes of Action is **$495,706.14**.

Columbia next provides amounts in controversy for Lockhart's minimum wage and waiting time claims. A similar problematic assumption underlies both of these amounts. Rather than basing the frequency of violation on any sort of evidence, Columbia used the maximum number of violations possible. For the minimum wage claim, therefore, Columbia assumes that every employee received less than the minimum wage for every pay period during the limitations period. (NOR ¶ 42.) Likewise, for the waiting time claim, Columbia assumes that every employee who terminated employment with Columbia was not paid earned wages for the thirty day maximum. (*Id.* ¶ 47.)

While courts sometimes allow the use of a 100 percent violation rate to

determine the amount in controversy, the Ninth Circuit rejects such self-serving assumptions when the removing party provides no supporting evidence. *Garibay v. Archstone Comtys. LLC*, 539 Fed. Appx. 763, 764 (9th Cir. 2013); *see also Vasserman v. Henry Mayo Newhall Memor'l Hosp.*, 65 F. Supp. 3d 932, 978–79 (C.D. Cal. Dec. 5, 2014) ("Absent evidence or allegations supporting the reasonableness of such an assumption, [Defendant's] use of a 100 percent violation rate is speculative and unsupported."); *Moreno v. Ignite Rest.Grp.*, No. C 13-05091, 2014 WL 1154063, at *5 (N.D. Cal. Mar. 20, 2014) ([C]ourts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support.").

Lockhart's allegations regarding minimum wage and waiting period violations are not strong enough to warrant use of a 100 percent violation rate. When discussing the alleged minimum wage violations, Lockhart provides very little detail regarding the severity and frequency of the violations, stating only that Columbia "failed to pay minimum wage to Plaintiff and the other class members as required." (NOR Ex. A ¶ 78.) This bare statement alone cannot provide the evidence for Columbia's use of the maximum violation possible in its calculations. Furthermore, the only evidence provided by Columbia regarding minimum wage is an average hourly wage per employee for a four-year period. (Young Decl. ¶ 9.) Columbia did not break this average up by year or by employee position (for example, providing an average salary for sales associates separate from managers). Based on this complete lack of evidentiary support, the Court finds that Columbia's calculations for minimum wage violations are insufficient to support the amount in controversy requirement. *See Ruby v. State Farm Gen. Ins. Co.*, C 10-02252 SI, 2010 WL 3069333, *3 (N.D. Cal. Aug. 4, 2010) (discarding defendant's alleged amount in controversy based on 100 percent violation rate where plaintiff's allegations did not support underlying assumptions and defendant provided no evidence supporting its calculations).

Lockhart's allegations relating to waiting time violations again fail to support a 100 percent violation rate. Lockhart only alleges that Columbia "failed to pay

Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (NOR Ex. A ¶ 84.) This allegation does not suggest that all employees who left Columbia failed to receive earned, unpaid wages for the full thirty day period. Likely class members exist who are entitled to recover penalties for only one day or for a week or two. As the Court noted above, it rejects Columbia's assumption of a 100 percent violation rate and again notes that Columbia failed to provide any evidence that maximum penalties must be assessed. Accordingly, Columbia's calculations concerning waiting period violations do not support a conclusion that removal was proper.

The remaining calculations are for non-compliant wage statements, which Columbia calculates to be $902,700.00, and attorneys' fees, which Columbia speculates could be $1,442,146.71. (NOR ¶ 51.) The sum of Columbia's calculations that have been accepted by the Court as reasonable and supported is $619,632.68 ($123,926.54 in overtime penalties + $495,706.14 in meal and rest period violations). Therefore, even if the Court were to accept Columbia's calculations for non-compliant wage statements and attorneys' fees, the total amount in controversy would still fall far short of the $5 million CAFA requirement. Accordingly, the Court finds that Columbia has not plausibly shown that the amount in controversy here is at least $5 million. Because Columbia has not established the adequate amount in controversy, the Court will not reach the question of whether the parties are minimally diverse.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion to Remand. (ECF No. 14.) The case is remanded to Riverside Superior Court, Case No. RIC150504. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

September 22, 2015

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

8